UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-161-GWU

RICHARD D. SHEPHERD,                                             PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

Richard Shepherd brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to

1

07-161  Shepherd

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20  C.F.R.  Section  404.1529  (1991).   However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-161  Shepherd

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Shepherd, a 46 year-old former underground miner, tipple worker, and trash collector with a high school education, suffered from impairments related to being status post fracture of the left clavicle, T6 vertebral body and L2/L4 transverse process, being status post right knee arthrotomy, Hepatitis C, and chronic obstructive pulmonary disease.  (Tr. 21, 26).  While the plaintiff was found to be unable to return to any of his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 24, 26).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 27).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 26-27).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

07-161  Shepherd

The hypothetical question presented to Daryl Martin included an exertional limitation to medium level work along with such non-exertional limitations as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to use foot pedal controls; (3) an inability to more than occasionally bend, twist, kneel, crouch, or crawl; and (4) a need to avoid exposure to concentrated dust, gases, fumes, temperature extremes, excess humidity, vibrations or industrial hazards.  (Tr. 183-184).  In response, the witness identified a significant number of jobs in the national economy which could still be performed.  (Tr. 184).  Therefore, assuming that the vocational factors considered by Martin fairly depicted Shepherd's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Shepherd's condition as required by Varley.  The ALJ relied heavily upon the findings of Dr. Mukut Sharma, who examined the plaintiff on one occasion in October of 2004.  X-rays revealed a healed fracture of the mid-shaft left clavicle with overriding callus formation.  (Tr. 130).  A fractured T6 vertebra was also healed but osteophyte formation was noted. (Id.).  The claimant's rib fractures were said to have healed.  (Id.).  The fracture of left L2 had not yet healed.  (Id.).  The x-rays revealed no fracture of the right knee. (Id.).  Physical examination revealed that the claimant was neurologically intact. (Id.).  Dr. Sharma diagnosed status post motor vehicle accident with multiple fractures.  (Id.).  Physical therapy and exercises were recommended.  (Id.).  The

doctor indicated that Shepherd should not perform underground coal mining but indicated that "any outside duty he may be able to do but not crawling, etc." (Id.). The ALJ's hypothetical question was essentially compatible with this opinion. (Id.).

Dr. Jason Harris, an examining consultant, examined Shepherd and found no impairment with regard to sitting, standing, moving about, handling objects, hearing, seeing, speaking, and traveling upon physical examination. (Tr. 138). Gross manipulation and grip strength were within normal limits. (Id.). The doctor completed a Medical Assessment of Ability to do Work-Related Activities Form upon which he indicated a limited ability to stoop as the only restriction. (Tr. 139-142). The hypothetical factors were essentially consistent with this opinion.

Other treating and examining sources did not impose more severe functional restrictions upon Shepherd than those found by the ALJ. The plaintiff was treated following his motor vehicle accident at the University of Kentucky Medical Center in June of 2004. He was diagnosed with a left clavicle fracture, T6 vertebral body fracture, left L2-L3 transverse process fractures, left fourth and fifth rib fractures, and right knee arthrotomy. (Tr. 100). No long-term restrictions were indicated.

Following discharge from the hospital, Shepherd was seen by Dr. Andrew Bernard in late June of 2004. Dr. Bernard noted the multiple fractures but found that the patient had minimal pain and no dyspnea. (Tr. 113). The doctor imposed no long-term physical restrictions. (Tr. 113-114).

In October of 2004, Shepherd underwent a colonoscopy at the Lexington Surgery Center performed by Dr. Jerry Lyon.  (Tr. 115-123).  Dr. Lyon noted a final diagnosis of colon polyps and hemorrhoids.  (Tr. 115).  More severe physical restrictions than those found by the ALJ were not imposed.

Treatment records from the Hazard Clinic reveal that Shepherd was treated there in September and October of 2004.  (Tr. 124-128).  A chest x-ray revealed no significant pulmonary disease.  (Tr. 128).  Hepatitis C was diagnosed.  (Tr. 125).  No long-term functional limitations were assessed.

In June of 2006, Shepherd was seen by Dr. Mark Burns.  X-rays of the right knee, left shoulder, and cervical spine were all reported to be normal.  (Tr. 133-134).  Thus, no treating or examining physician identified the existence of more severe physical restrictions than those found by the ALJ.

Dr. John Rawlings reviewed the record in December of 2004.  He noted the multiple fractures with osteophyte formation in the thoracic spine with no neurological loss as well as the diagnosis of Hepatitis C.  (Tr. 131).  Dr. Rawlings opined that Shepherd's problems would not meet the durational requirements of the Social Security Act and, so, should be regarded as less than severe.  (Id.).  This opinion, while not adopted by the ALJ, at least provides additional support for the ultimate conclusion that the plaintiff was not disabled.

In summary, the ALJ's findings are to be consistent with the opinions of Doctors Sharma, Harris and Rawlings.  Furthermore, no treating or examining

sources specifically contradicted the ALJ's findings.  Therefore, substantial evidence

supports the administrative decision.

Shepherd argues that the ALJ should have recontacted Dr. Sharma because

his opinion was ambiguous.  The administrative regulations provide that:

> When the evidence we receive from your treating physician or
> psychologist or other medical source is inadequate for us to
> determine whether you are disabled, we will need additional
> information to reach a determination or a decision.  To obtain the
> information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or
> other medical source to determine whether the additional information
> we need is readily available.  We will seek additional evidence or
> clarification from your medical source when the report from your
> medical source contains a conflict ambiguity that must be resolved,
> the report does not contain all the necessary information, or does not
> appear to be based on medically acceptable clinical or laboratory
> diagnostic techniques.

20 C.F.R. Section 404.1512(e)(1).  The plaintiff asserts that Dr. Sharma's use of the

term "etc." in describing his functional limitations makes this opinion ambiguous

and, so, the ALJ should have recontacted the physician.  However, as noted by the

defendant, Dr. Sharma was a one-time examiner rather than a treating source

whose issuance of an ambiguous opinion might trigger the recontact duty.  Even if

his opinion were ambiguous, the remainder of the record was adequate for the ALJ

to determine that the claimant was not disabled.  As previously noted, the ALJ's

findings were essentially consistent with the restrictions identified by Dr. Harris and

no treating or examining source reported the existence of more severe functional

07-161  Shepherd

limitations than those found by the ALJ.   Therefore, the Court must reject Shepherd's argument.

The undersigned concludes that the administrative decision should be affirmed.   Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 29th day of February, 2008.


**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**